LUIGI TORTOLANI *vs.* DEENA DIWINSKY.

JUNE 23, 1959.

PRESENT: Condon, C. J., Roberts, Paolino, Powers and Frost, JJ.

POWERS, J. This is an action in assumpsit to recover a balance allegedly due on a contract and for moneys due and owing for services, goods and supplies. The instant case and a companion case, *Diwinsky* v. *Tortolani,* 89 R. I. 290, were tried together before a justice of the superior court sitting with a jury, and resulted in a verdict for the plaintiff. It is here on the defendant's bill of exceptions to the denial of her motions for a directed verdict and for a new trial.

Although the cases were heard together before us, we have treated them separately. See our opinion filed this day in *Diwinsky* v. *Tortolani, supra.*

It appears from the evidence that the parties entered into a contract on June 27, 1953 wherein plaintiff agreed to construct a dwelling house for defendant and her husband and defendant agreed to pay $18,300 in consideration thereof. The contract consisted of the agreement and, by incorporation, the plans and specifications. The plaintiff was to receive payments in four equal installments of $4,575. The first payment was to be made when the foundation was

completed, the second and third at specified stages of construction, and the fourth when the work was completed.

The plaintiff testified he advised defendant that if any changes were to be made he must know before the work was started; otherwise changes would constitute extras for which he would be entitled to additional compensation. The first three payments were made on schedule.

The plaintiff further testified that payments were made after inspection by a representative of the bank. It appears that the work went smoothly until after the third payment was received. The evidence shows that the work was started after June 27 and defendant's husband, who died August 23, was present at the first two payments. Shortly after his death the work was suspended until the fall when the plastering was completed and plaintiff worked on and off through the winter on the interior of the house. He further testified that by this time "the inside of the house was pretty near completed * * *."

The plaintiff received an additional $1,500 on March 30, 1954 after requesting more funds from defendant to assist him in completing the work. This made a total of $15,225 that plaintiff had received from defendant. The plaintiff admitted that he left the work unfinished and estimated it would cost defendant $1,045 to complete it. He testified that he did not complete the work for the reason that defendant refused to pay for the extra work as agreed, but he acknowledged that on the original contract defendant was entitled to recoup the cost of the unfinished work.

The record discloses that for a time during the construction of the house defendant considered selling it and a sign was placed thereon bearing the names of plaintiff and the attorney for defendant. Later she changed her mind and moved into the house in the latter part of April 1954 at which time as she testified: "The place was almost completed when I had to move in." It was shortly thereafter

that plaintiff removed his tools from the premises and did not return.

The plaintiff testified that during the time the house was being constructed the defendant or her husband in her presence ordered numerous changes for which she agreed to pay additional compensation. The plaintiff testified that such changes included removing asphalt shingles from the peaks and replacing them with red cedar panels, a change from "American Standard" to "Crane" plumbing fixtures, which was substantially more costly, and a change from copper to wooden gutters resulting in further additional cost.

Other changes included one long window in the kitchen rather than two small ones, another cabinet in the kitchen as well as a longer counter and snack bar. The plaintiff testified that these changes were also requested by defendant who agreed to pay extra for them. Further, according to plaintiff's testimony, after some of the interior painting had been completed the defendant changed her mind about the color and agreed to additional payments for repainting.

The plaintiff's testimony on the requested changes for which defendant agreed to pay also included added floor joists to comply with the building laws of the city of Cranston, panel windows on the sides of the front door, hood over the front door and a closed-in rear porch rather than a patio as specified in the original plan. His estimate of the value of extra work for which he was entitled to be paid was $3,784. He admitted that prior to the bringing of his suit he had never presented defendant with an itemized bill for the extra work.

His testimony as to requested changes and defendant's agreement to pay for them was substantiated in part by Charles Giblin, an electrician employed by defendant, and by Silvio DeMarco, a mutual friend of the parties. Both witnesses testified to overhearing defendant requesting changes, and DeMarco added that at defendant's request a wall partition was moved back to enlarge one of the bed-

rooms. Although plaintiff did not mention this particular change, DeMarco stated that the request was made in his presence and that defendant's husband in her presence said: "Don't worry. We will pay for it."

The defendant admitted requesting an additional fireplace in the basement for which plaintiff testified he had been paid $300. She further admitted agreeing to pay an additional $100 for the change from a picture window to a bow window in the front of the house and to pay extra for changes regarding an ironing board. Other than these, however, she flatly denied requesting any changes or promising to pay therefor and contradicted plaintiff and his witnesses Giblin and DeMarco by specific questions and answers.

She testified that after plaintiff refused to do any further work she engaged J. Baccala & Sons, Inc., who together with Allie Campopiano entered into a joint venture to complete the unfinished work and correct defective work performed by plaintiff. The plaintiff denied that any of his work was defective. The contractor Campopiano testified as to the work necessary to be done and stated that the cost thereof amounted to $4,200 for which he and his associate Baccala were paid by defendant.

During the trial of the two cases the jury took a view of the premises in dispute, at which time they were instructed by the trial justice to observe those matters which attorneys for the parties would call to their attention.

The defendant's first exception is to the denial of her motion for a directed verdict. It is her contention that as a matter of law plaintiff could not recover the balance of the contract price since by his own admission the contract was never completed; nor could plaintiff recover any part of it on the theory of substantial compliance since he wilfully abandoned the work. She calls our attention to the case of *Carpenter* v. *Gay*, 12 R. I. 306, in support of her contention.

288

. In that case the plaintiffs in a garnishee action sought to recover moneys which they alleged were in the hands of defendant as trustee for John McBain. McBain, a contractor, had agreed to build a house for Gay and the latter had agreed to pay $6,400 in varying sums at specified stages of construction. After Gay had paid a total of $3,800 the contractor McBain abandoned the job when it was about three quarters completed. It was the balance due on the contract between McBain and Gay that Carpenter attempted to reach in the garnishee proceedings, having recovered a judgment against McBain, their principal debtor.

The court gave judgment to the defendant, stating: "To charge a person as trustee the principal debtor must have a cause of action against him." It further held that on the facts disclosed, Gay was not indebted in any further sums to McBain since the latter had abandoned and not fully performed the contract. Recognizing that the strict rule at common law requiring absolute performance had been relaxed in many jurisdictions, particularly in the case of building contracts, the court also held that nevertheless the great weight of authority still does not permit recovery on the contract or in quantum meruit, or quantum valebant where "the contractor has, without necessity, or other legal excuse, voluntarily abandoned the work."

No Rhode Island decision has been called to our attention, nor have we been able to discover any where the doctrine laid down in *Carpenter* v. *Gay* has been relaxed or abrogated. A like doctrine has been applied in *Danville Bridge Co.* v. *Pomroy & Colony*, 15 Pa. 151, *Gillespie Tool Co.* v. *Wilson*, 123 Pa. 19, and *Desmond-Dunne Co.* v. *Friedman-Doscher Co.*, 162 N. Y. 486.

In the instant case the plaintiff concedes that he abandoned the work before it was completed, but asserts as a justification for his conduct the refusal of defendant to pay him for extra work performed during the construction of the house and for which extra work he alleges defendant

agreed to pay. We are of the opinion that the question of legal excuse or good faith in the instant case should not have been submitted to the jury. Assuming without deciding that a jury could have considered the question on a proper presentation of plaintiff's justification, nevertheless it is plaintiff's testimony that he at no time prior to the commencement of this action submitted a bill for his extra services or made a formal demand for payment. Therefore he could not recover on the first count in his declaration, in which the damages sought were based on the original contract between the parties. As to this count the trial justice erred in not directing a verdict for defendant as requested.

The plaintiff's declaration also sets out the common counts under which he seeks to recover for the deviations from and the additions to the original contract. He alleges these were made at the request of defendant and involved the expenditure of substantial sums which he alleges defendant agreed to pay. We have carefully reviewed the record and are of the opinion that the jury could have been warranted in returning a verdict for plaintiff on the second count of his declaration. The trial justice therefore did not err in refusing to direct a verdict for defendant on this part of plaintiff's case.

The refusal of the court in *Carpenter* v. *Gay* to permit recovery in quantum meruit or quantum valebant was based on McBain's breach of the original contract. No separate agreements were there involved and in that respect the decision in that case is not applicable to the case at bar. Here the jury returned a verdict for the plaintiff in the sum of $2,057. The record does not disclose, however, whether the verdict was for substantial performance of the terms of the contract or for the additional work which the plaintiff testified grew out of separate agreements. If it was for the former it cannot be sustained. Since we are unable to determine on which ground the verdict was based, the defend-

ant's exception to the denial of her motion for a new trial must be sustained.

The defendant's exception to the denial of her motion for a directed verdict as to the first count is sustained, and as to the second count it is overruled. Her exception to the denial of her motion for a new trial as to the second count is sustained, and the case is remitted to the superior court for a new trial thereon in accordance with this opinion.

*Ralph Rotondo,* for plaintiff.

*Charles A. Curran, Leonard Decof,* for defendant.