## Hoskinson *et al. versus* Eliot *et al.*

1. Articles of partnership created Winn "the agent and to have the general supervision of the business" of the partnership, but did not limit his authority as partner. He had the same general authority as partner as if he had not been constituted special agent.

2. Restrictions in articles of partnership on the power of a partner would not affect those to whom they were unknown.

3. A partner may enter into contracts in the ordinary business of the firm, sell or pledge goods, draw, negotiate, endorse or accept bills or other negotiable securities, and do any other acts incident or appropriate to such trade.

4. When a partnership is for a particular purpose, it is in itself a grant to the acting members of the company to transact its business in the usual way.

5. Stipulations in articles of partnership are to regulate the rights and conduct of the partners as among themselves, the trading world cannot know them, but must trust to the general powers of all partnerships.

6. In contracts as to negotiable paper, there is no distinction between a general and a special partnership, and the partnership is liable for money borrowed by one partner on the credit of the firm within the scope of its business.

7. The principle that one partner may bind the firm applies as well to partnerships for manufacturing and mechanical purposes as to those for commerce.

8. Where a partner was specially constituted the general agent of the firm, and was in the habit of borrowing money with the knowledge of his co-partners and without objection, the firm would be liable under the agency for money borrowed by him.

9. A partner constituted by articles "the agent and to have the general supervision" of the business of the firm, is not therefore authorized to bind the firm by a note under seal.

10. A partner cannot bind the firm by deed; a specialty executed by him in the name of the firm binds himself only.

11. Merger takes place only when the debt is one and the parties are identical.

12. A partner gave a sealed note in the name of the firm for a precedent indebtedness. *Held,* that the debt was not merged in the note.

13. The acceptance of a specialty from one partner is a satisfaction of a partnership indebtedness on simple contract.

14. A sealed note in the name of a firm, made by one partner, is not a satisfaction of the firm debt unless accepted as the individual note of the partner.

15. A note under seal by one partner for the firm is evidence of the amount due by the firm on settlement.

16. A judgment will not be reversed for an error which does the plaintiff in error no harm.

17. In a suit against a firm it is error to join the administrators of a deceased partner with the survivors.

18. The joinder of the administrators of a deceased partner with the survivors may be amended under the Act of May 4th 1852 (Amendments).

19. When the objection to misjoinder is made for the first time in the Supreme Court, the amendment will be permitted there as if made below.

October 19th 1869. Before THOMPSON, C. J., READ, AGNEW, SHARSWOOD and WILLIAMS, JJ.

Error to the Court of Common Pleas of *Erie county*: No. 59, to October and November Term 1869.

[Hoskinson *v.* Eliot.]

This was an action of debt, commenced April 29th 1868, by John Eliot and others, trading as Eliot, Goodwin & Co., against William Hoskinson, James Hoskinson, Charles A. Winn, William Bone, Reese W. Flower, and Jonas Gunnison and C. E. Gunnison, administrators, &c., of George J. Morton, deceased, doing business under the firm name of the "Excelsior Steam Pressed Brick Company." The first two counts of the declaration were on a note under seal; the other counts were the common money counts. To the first two counts the defendants pleaded "*non est factum;*" to the others, "*nil debet.*"

The plaintiffs were private bankers with whom the defendants kept an account. The claim filed was the transcript of the account of the defendants with the bank, and also the note, as follows:—

"$5413.24.          "Erie, Pennsylvania, October 24th 1857.

"Ninety days after date we promise to pay to the order of Eliot, Goodwin & Co., at their office, five thousand four hundred and thirteen dollars and twenty-four cents, without defalcation, value received; and further, we hereby authorize and empower any attorney of record, of Pennsylvania or elsewhere, to appear for and enter judgment against us for the above sum, with or without declaration, with costs of suit, release of errors, without stay of execution, and with ten per cent. added for collection fees; and we also waive the right of inquisition on any real estate that may be levied upon to collect this note, and do hereby voluntarily condemn the same, and authorize the prothonotary to enter upon the fi. fa. said voluntary condemnation; and we further agree that said estate may be sold on a fi. fa.; and we hereby waive and release all relief from any and all appraisements and exemption laws of any state now in force or hereafter to be passed.

"CHAS. A. WINN,
"Agent E. S. P. B. Co. [L. S.]"

On the trial, March 3d 1869, before Vincent, J., the plaintiffs gave in evidence an agreement dated 1866 between the defendants, as follows :—

"To associate themselves in a *limited* partnership for carrying on in the county of Erie the art and trade of manufacturing and vending bricks, under the firm name and title of 'The Excelsior Steam Brick Press Company.' Each one of the four parties to these presents binding themselves to contribute $5000, to be paid to the agent of said company as he may from time to time require it in the purchase of machinery and construction of the necessary works for carrying on the said business of the company. That the said copartnership shall commence at the date of these presents, and terminate on the 1st day of January, A. D. 1872, unless

[Hoskinson *v.* Eliot.]

sooner dissolved by and with the mutual consent of all the four parties to this contract.

"It is understood and agreed upon by the parties to these presents, that the said Charles A. Winn, party of the fourth part, shall be the agent and have the general supervision of the business of the said company; and the said C. A. Winn, by these presents, agrees to devote his whole time and attention to the business and interests of the said company, and he shall keep, during the copartnership, perfect, just and true books of account, wherein shall be entered and set down as well as all money received and accruing from the sale of bricks or other articles manufactured by said company; and as soon as the said company shall commence the manufacture of bricks, the said C. A. Winn shall, on the first day of each and every month, render to each one of the four parties to this contract a true statement, accompanied with proper vouchers, of the business and accounts of the said company, showing to his copartners the amount of profit and loss which has accrued to, or been sustained by, the said company during the month preceding; said books and accounts shall be always open for the examination and inspection of the copartners.

"The copartners are to share equally in the profits of the business of the said company, and bear equally any losses the said company may sustain, &c. * *

"It is further agreed that William Bone shall have charge of the yard and kilns, and oversee the same, &c., * * and to have a reasonable compensation, &c.

"It is further agreed that the said C. A. Winn shall proceed immediately to purchase the necessary machinery, and construct the necessary works." * *

The plaintiffs having given evidence that Winn acted as agent for defendants, signed checks and made out bills as agent, and proved Winn's signature to the note filed and declared on, offered it in evidence. The offer was objected to by the defendants for want of authority in Winn to make the note. The court admitted the note as showing the state of accounts between the parties, how much was due, and what consideration it represented. A bill of exceptions was sealed for the defendants. The plaintiffs offered in evidence a check on them for $1000, signed "C. A. Winn, Agent," and payable to self or bearer, and called P. H. Bell, who testified that he had received the check from Winn in payment of a debt due by the defendants, and that it had been paid to him by the plaintiffs. Witness further testified that Winn, as agent of the defendants, had an account with the firm of witness.

The defendants objected to the offer—it was admitted by the court as showing how the plaintiffs' account was made up, and a bill of exceptions sealed for defendants.

Other evidence, so far as is necessary to understand the case,

[Hoskinson *v.* Eliot.]

is to be found in the charge of the court, the paper-books not containing any notes of evidence.

The defendants' points were:—

" 2. The fair construction of the articles of association entered into by the defendants is, that $20,000 was their capital to be paid in, that sum was considered by the parties sufficient to carry on the business; that there is no provision in said agreement to raise any additional sum of money by assessment on themselves, by loan or otherwise.

" 4. The powers of Winn to act in the premises were simply those of an agent, and *not* as a *partner;* therefore the extent of his authority is to be found in the articles of association.

" 5. The powers and authority of Winn, contained in said articles of association, are confined and limited to the general supervision of the business of the said association, and there is no power given Winn to borrow money on the credit of the association. Nor had he any authority to make, endorse or negotiate any note, bill or draft in the name of said association, by which these defendants could be made liable.

" 6. If the jury believe that the sealed note was given on settlement of the account against the Excelsior Steam Press Brick Company, said amount is merged in said sealed note, and plaintiffs cannot recover for said amount.

" 7. The note is not binding on the defendants because the said Winn had no authority to give said note.

" 8. The association being one for a special purpose, with a specified capital of $20,000, the agent of that association could not in equity, without the consent of the members of the association, incur liabilities on them before the capital was fully expended in the business, and there is no evidence whatever that there was any necessity for loans to carry on the business of said association."

The court charged:—

" In 1866 the defendants in this case entered into a business association under the name of the 'Excelsior Steam Press Brick Company,' for the purpose of 'carrying on in the county of Erie, * * * the art or trade of manufacturing and vending bricks.'

" For the purpose of managing the said business the parties agreed that Charles A. Winn, party of the fourth part, should be the agent of the company to purchase machinery and construct the works necessary for carrying on the business, and they also agreed that he should have the general supervision of the business of said company, and he was to devote his whole time and attention to the business and interests of the company.

" He was by this language, in our opinion, made the general business agent of the firm for all purposes connected with said business. In the course of carrying on the business of the com-

[Hoskinson v. Eliot.]

pany he kept a bank account with the plaintiffs, and this suit is brought to recover an alleged balance due the plaintiffs by the company.

"It is not denied that Winn, acting as the ostensible agent of the company, contracted this debt, but the defendants say that he had no right to borrow money in the name of the company, either by note or draft, and that he could give no note in the name of the company that would bind any one but himself, and that even if he had authority to contract such a debt as the one in suit, having settled up to a certain date and given a note under seal, signed by him as agent of the 'E. S. P. B. Co.,' the debt then due the plaintiffs was merged in the higher security, or extinguished by it, and that note being executed in such a way as not to bind any of the partners but the one who signed it, the plaintiffs cannot recover against any one but Winn, and are precluded from going back to the original account as a foundation for their suit.

"Each member of a firm is an agent of all the partners and has power to bind the firm by any contract made by him that is in the usual course of the business of the firm, and especially if the partner thus contracting is the specially authorized agent of the firm.

"Winn had power within the scope of the business of the firm outside of the special power conferred upon him, by the agreement in evidence.

"Was it within the usual scope of the business of the firm to borrow money to carry on the business? The firm had power to borrow money and the partner specially appointed to carry on the business had power to do all that was necessary and usual in carrying on such business.

"The trading world, with which the company was in continual intercourse, could not individually examine the articles of agreement between the partners, but had to trust to the general powers contained in all partnerships. In our opinion it was not incumbent on the persons dealing with the defendants' firm to inquire into its pecuniary condition. The only inquiry the law imposes upon persons dealing with a firm is whether or not the transaction in hand is within the usual course of the business carried on by the company. If it is they may safely deal with the partner or agent representing the firm and it will be bound by his acts.

"If you believe the evidence of Mr. Curry, Mr. Morton, one of the partners, knew that the firm, through Winn, was borrowing money, and this is some evidence not only that the firm knew what Winn was doing, but also that the capital mentioned in the articles of agreement had either not been paid in or was exhausted, for it is fair to infer that if the firm had in hand unexpended capital Morton would not have assented to the transaction with Curry. If you believe the evidence of Countryman, one of the Hoskinsons was aware of the fact that the firm owed the plaintiffs and made

[Hoskinson *v.* Eliot.]

no protest against the manner in which Winn was carrying on the business of the firm. It is in evidence that every member of the firm was from time to time in the office of the company, with full power and opportunity to examine the books, and it would certainly be in the usual course of human action in relation to business matters that they should, to some extent at least, inform themselves in relation to the mode in which the business was carried on by their agent. It is entirely for you to say how much weight you will give any of this evidence in making up your minds as to the extent of the knowledge, if any, the several members of the firm had of the manner in which the business was carried on.

" The law will not presume that money obtained by the agent of a firm in the usual course of business was not applied to the use of the firm so far as its creditors are concerned. Is there anything on the face of any of the notes or drafts given by Winn in the name of the firm that indicates that the transaction was not· of the usual course of the business of such a firm ? Is it not of the usual course of such a business to borrow money, or to have a line of discounts ? If it is, and these evidences of debt do not on their face show transactions outside of such usual course of business, there is nothing in the case to prevent the recovery of the plaintiffs, unless you find from the evidence that when the plaintiffs took the note given for the balance of their account, they took it intending to discharge from liability all the members of the firm but Winn.

" We answer defendants' points as follows :

" 2. There is no special provision in the articles of agreement to provide more money than the capital therein mentioned, but we cannot charge that the manager of the business of the firm could not borrow money in its name to carry on the business, if he found it necessary, or saw fit to do so, and thus modified we answer this point in the affirmative.

" 4. We answer this in the negative so far as is implied in it the idea that Winn had not, as such agent, all the powers of a partner to bind the firm.

" 5. If you believe from the evidence that the act of Winn, in borrowing money on notes, bills or drafts, were in the usual course of such business, he had power to make them and the firm is bound by his acts, and if you so find we answer this point in the negative. If you find that his acts were not in the usual course of such a business we answer in the affirmative.

" 6. We are not sure that the opinion we have formed on this point is correct. We leave it to you to find as to the fact whether or not the plaintiffs took the note as the note of Winn or as the note of the firm. There is no doubt that such a note if taken by the payee with the intention of taking it as the note of the signer only, extinguishes the account for which it was taken and releases

[Hoskinson *v.* Eliot.]

all but the signer, but it is not clear to us that such is the effect if not taken with such an intention. If you then believe from all the evidence that when the plaintiffs took this note it was taken as Winn's individual note in satisfaction of the plaintiffs' claim to that date, plaintiffs cannot recover. But if you believe it was not so taken, but with the belief that it was the note of the firm and with the intention to hold the firm for the debt, we think the plaintiffs can recover if there be no other reason against their recovery.

" 7. We answer this in the negative with explanations given in answer to former points."

The verdict was for the plaintiffs for $6752.94, and judgment was entered generally on the verdict.

The defendants took a writ of error and assigned for error:—entering judgment against James Gunnison and Charles E. Gunnison, administrators of George J. Morton, deceased; admitting the evidence stated in the bills of exception and the answers to the points.

*J. R. Thompson* and *J. C. Marshall*, for plaintiffs in error.—The administrators of a joint contractor cannot be joined with the survivors: Seip *v.* Drach, 2 Harris 355, 2 Williams on Exrs. 1191. All Winn's powers were given by the articles and were limited by them; he therefore had no power to borrow money: Story on Agency, sect. 126; Schimmelpennich *v.* Bayard, 1 Peters 289; Allen *v.* Ogden, 1 Wash. C. C. R. 174. A partner cannot bind his firm by deed: Snyder *v.* May, 7 Harris 235; Bewley *v.* Tams, 5 Id. 485. The court is to construe a writing and therefore erred in leaving to the jury to determine the intention of the parties when the note was given: Jones *v.* Johnson, 3 W. & S. 277. The note merged the debt or is a satisfaction of the account: Wallace *v.* Fairman, 4 Watts 378; Anderson *v.* Levan, 1 W. & S. 334; Lewis *v.* Williams, 6 Wharton 264; Tom *v.* Goodrich, 2 Johns. R. 213; Harris *v.* Lindsey, 4 Wash. C. C. R. 274; Evans *v.* Drummond, 4 Espinasse 89. Winn could not bind his partners by the note and it could not be enlarged by parol evidence: Story on Agency 76–81; Gold *v.* Norfolk L. Co., 9 Cush. R. 343.

*J. W. Walker*, for defendants in error.—Winn had power to give the note as agent under the articles: 1 Parsons on Cont. 38; Story on Cont. sect. 134; Seiple *v.* Irwin, 6 Casey 513; The Loudon Savings Fund Society *v.* Hagerstown Bank, 12 Casey 498; Williams *v.* Getty, 7 Casey 461. As to merger: Jones *v.* Johnson, 3 W. & S. 279; Barbour on Parties 235.

The opinion of the court was delivered, July 7th 1870, by

WILLIAMS, J.—The main question presented by the assignments of error in this case—though not the first in numerical order—is,

[Hoskinson *v.* Eliot.]

whether Charles A. Winn, under the articles of partnership, constituting the Excelsior Steam Press Brick Company, had authority, either as agent or partner, to borrow money on the credit and for the use of the firm in carrying on its business; and whether the partnership is liable for the amount lent or advanced for its use, by the plaintiffs below, at his request.

It is contended by the plaintiffs in error that Winn had no authority to borrow money on the credit of the firm because, by the articles of association, it was a limited partnership for carrying. on the art and trade of manufacturing and vending bricks, with the capital agreed to be contributed by the parties, under the agency and supervision of Winn, whose power and authority did not exceed that given by the articles of copartnership. As these do not, in terms, give him power to borrow money, it is insisted that the partnership is not liable for the money which he borrowed of the plaintiffs. It is true that the partnership was not a general partnership for carrying on all the trade and business of the parties composing the firm, but was a special or limited partnership for carrying on the particular business of manufacturing and selling bricks. But though a partnership may be special or limited to a particular branch of business, it does not follow that a partner has less power to bind such a firm, in the scope of its business, than he would, if it were a general partnership. Nor does it necessarily follow, because a partner is constituted the agent of the firm, and the general supervision of its business is committed to him by the articles of copartnership, that he has no other or greater power than that which is expressly or impliedly given to him as such agent. If the articles of association do not limit or restrict his authority, he has the same general power to bind the firm that he would have, if he had not been constituted sole agent for the supervision and management of its business. As in this case the articles of copartnership do not impose any limitation or restraint upon the authority of Winn, he must be regarded as having all the general power of a partner to bind the firm in the scope of its business. And if the articles had imposed restrictions on his power, such restraints would not affect parties to whom they were unknown, and who, in their dealings with the firm, trusted to the general and well established principles of the commercial law. What then is the general power and authority of a partner? He may, as is well settled, enter into any contracts or engagements on behalf of the firm in its ordinary trade and business. He may buy, sell or pledge goods; draw, negotiate, endorse or accept bills, notes, checks or other negotiable securities; or do any other acts which are incident or appropriate to such trade or business, according to the common course or usages thereof: Story's Part. p. 102. As said by Mr. Chief Justice Marshall in Winship *v.* Bank U. S., 5 Peters 561: "A partner—certainly the acting partner

[Hoskinson *v.* Eliot.]

—has power to transact the whole business of the firm, whatever that may be, and consequently to bind his partners in such transactions, as entirely as himself. This is a general power, essential to the well conducting of business; which is implied in the existence of a partnership. When then a partnership is formed for a particular purpose, it is understood to be in itself a grant of power to the acting members of the company to transact its business in the usual way. * * * * This is a general authority held out to the world, to which the world has a right to trust. The articles of copartnership are perhaps never published. They are rarely, if ever, seen, except by the partners themselves. The stipulations they may contain, are to regulate the conduct and rights of the parties, as between themselves. The trading world with whom the company is in perpetual intercourse, cannot individually examine these articles, but must trust to the general powers contained in all partnerships. The acting partners are identified with the company and have power to transact its business in the usual way." In all contracts concerning negotiable paper, the act of one partner binds all; and there is no distinction in principle upon this point between general and special partnerships. One partner may borrow money for the partnership, and give notes and other negotiable securities therefor in the name of the firm; and the partnership is liable for money borrowed by one of its members on the credit of the firm within the general scope of its authority and according to the usual course of its business.

But, while it is conceded that this is the law as applicable to commercial partnerships, it is insisted that it does not apply to partnerships formed for mechanical or manufacturing purposes. But no such distinction is suggested or recognised in any of the adjudicated cases or text-books, and there is no foundation for it in the necessities or usages of these partnerships. The necessity for borrowing money to carry on the business of a manufacturing partnership may be as great as it is in order to carry on the business of one that is strictly commercial; and common observation and experience show that it is equally the custom and usage of manufacturing, as of commercial partnerships, to borrow money to enable them to conduct their business. In this case the jury have found that it was within the general scope of the business of the firm to borrow money to carry on its affairs; and, if so, Winn, as the acting partner, unquestionably had power to borrow money on the credit and for the use of the firm. But, aside from his general power as a partner, Winn had all the authority of a general agent, under the articles of copartnership, in the supervision and management of its business. And if his copartners knew that he was in the habit of borrowing money from the plaintiffs and others for the use of the firm without objection on their part, they are liable for the money so borrowed. We are not

12 P. F. Smith—26

[Hoskinson *v.* Eliot.]

furnished with the evidence, but it appears, from the charge of the court, that the plaintiffs gave evidence tending to show that the other members of the firm were cognisant of the manner in which Winn was conducting the business, and knew that he was borrowing money for the use of the firm, without objection or protest on their part; and, if so, the jury would have been justified in finding that they had either authorized or ratified his acts. As there is no exception or assignment of error to this part of the charge, we must presume that the evidence was sufficient to justify the court in submitting the question to the jury. In either aspect of the case, whether Winn be regarded as a partner, if the jury found that he acted within the scope and usage of the business of the firm; or if he be regarded as its agent under the articles of association, if they found that he acted with the knowledge and consent of its members, the partnership is liable for the money which he borrowed of the plaintiffs.

The next question to be considered is, whether Winn had authority to give the sealed note of the 24th October 1867 for the amount of the firm's indebtedness to the plaintiffs at that date; and whether it operated as a merger or satisfaction of the debt. It is clear that, under the power conferred by the articles of copartnership, he had no authority to give the note as the agent of the firm; and it is equally clear that, under his general power as a partner, he was not authorized to give it. One partner has no authority to bind his copartners by deed, and a specialty given by one, in the name of the firm, binds only himself. This principle is so well settled that it is unnecessary to cite any authority for it. Did the note then operate as a merger or satisfaction of the partnership indebtedness? Merger takes place only when the debt is one, and the parties to the securities are identical. As the other members of the firm were not parties to the note, it was not a merger of the indebtedness for which it was given. But if not a merger, was it a satisfaction of the debt? It cannot be doubted that the acceptance of a bond or specialty from one partner is an extinguishment or satisfaction of the partnership indebtedness on simple contract: Anderson *v.* Levan, 1 W. & S. 339. If then the note was accepted as the individual obligation of Winn, it extinguished the partnership indebtedness. But if it was not taken as the individual obligation of Winn, but as the obligation of the partnership, why should it be regarded as an extinguishment of the debt? To hold it to be a satisfaction of the partnership indebtedness, because Winn was bound by it, when it was not accepted as his individual obligation, would shock all our sense of justice, and the law is not so unreasonable or absurd. Whether the note was taken by the plaintiffs as the individual obligation of Winn, or as the obligation of the firm, was a question of fact which the court submitted to the jury,

[Hoskinson v. Eliot.]

with the instruction, in substance, that if it was taken as the individual obligation of Winn, it extinguished the partnership debt for which it was given, and the plaintiffs were not entitled to recover. But if it was taken as the note of the firm, with the intention of holding the firm for the debt, the plaintiffs might recover if there was no other reason against their recovery. The note on its face does not purport to be the individual obligation of Winn, but of the firm of which he was the acting partner and agent; and, under the evidence, there can be no doubt that the plaintiffs took it as the obligation of the firm, and not as the individual obligation of Winn. If both Winn and the plaintiffs were under a mutual mistake as to his authority to give the note, why should it be regarded as an extinguishment or satisfaction of the firm's indebtedness, when it was not binding on the other members of the partnership?

There was, then, no error in the refusal of the court to charge, as requested in the defendants' 6th point, that if the sealed note was given on settlement of the account against the company, said account is merged in said sealed note, and the plaintiffs cannot recover for said account. Nor was the admission of the sealed note in evidence error. If it had been offered and received as the foundation of the plaintiffs' claim or cause of action, its admission would have been error without proof of Winn's authority to give it. But it was offered and received as evidence of the amount due the plaintiffs by the defendants, on settlement, at the date; to be followed by evidence that plaintiffs had a balance of account to that amount then due them by the defendants; and for this purpose it was clearly evidence. Both the plaintiffs' and the defendants' books, by which it was followed, showed that there was a balance due the plaintiffs by the defendants at that date corresponding in amount with that of the note. But the court fell into an error in refusing to charge, as requested in defendants' 7th point, that the said note is not binding on the defendants because Winn had no authority to give it. The defendants were clearly entitled to an affirmative answer to this point, but the qualified negative given to it by the court did them no possible harm. If the court had affirmed the point, the plaintiffs would have been entitled to recover, under the common counts in their declaration, the balance due them by the defendants as shown both by their own and the defendants' books. There was no dispute as to the amount which the plaintiffs had advanced for the use of the firm at the request of Winn. The only controversy was in regard to his authority to borrow the money on the credit of the firm, and whether the liability of the company therefor was not discharged by the sealed note which he gave to the plaintiffs on settlement. As under the evidence there can be no doubt as to Winn's authority to borrow the money, and as the firm's in-

[Hoskinson *v.* Eliot.]

debtedness therefor was not discharged by the note which he gave, a reversal of the judgment, for the refusal of the court to charge that the note was not binding on the defendants, would be of no avail to them on another trial, and we have repeatedly said that we will not reverse for an error which did the parties complaining of it no harm. The right of the plaintiffs to recover did not depend upon Winn's authority to bind the defendants by giving the sealed note in the name of the firm, but upon his authority to borrow the money on its credit. The amount which he borrowed, as already intimated, was shown independently of the note by the books of both parties.

Nor was there error in admitting the check of November 20th 1867 in evidence. It was shown to have been drawn on the plaintiffs by Winn as agent, and delivered to Ball & Colt on account of the firm's indebtedness to them, and that part of the proceeds were applied in discharge of said indebtedness, and that the residue was paid out on Winn's checks for the use of the firm. Whether he drew the check as the agent of the firm, was a question of fact for the jury, and, under the evidence, it was properly admitted.

But it was error to join the administrators of the deceased partner as co-defendants with the surviving partners in the action. But no objection was made to the misjoinder in the court below. If objection had been made, the plaintiffs, under the Act of 4th May 1852, Pamph. L. 574, would have been permitted to amend the record by striking out the names of the administrators of the deceased partner.. As the objection is made here for the first time, we will permit the amendment with the same effect as if it had been made in the court below.

We have now considered all the questions presented by the assignments in this case, and as we discover no material error in the record, the judgment, as modified by the amendment suggested, must be affirmed.

> It is therefore ordered that the record in this case be amended by striking out the names of the administrators of the deceased partner, George J. Morton, wherever the same occur; and the record being now so amended, the judgment is affirmed.