# Reed's Appeal.

A sheriff who accepts the notes of the purchaser, at a sale under an execution, instead of cash, has no power to assign them to a third party in payment of a private debt. The parties interested may follow the fund, and reclaim it in the hands of such an assignee, with notice, and are not required to look to the sheriff's securities for their indemnity.

Notice to the attorney and agent of such an assignee, of the consideration of the notes, is notice to his principal.

APPEAL IN EQUITY from the Common Pleas of *Indiana county.*

This was a bill in equity exhibited by Sterrett, Robinson & Co., and other judgment-creditors of S. S. Jamison, against John Montgomery, late sheriff of Indiana county, James M. Richey, and James M. Beatty, to restrain the payment to the sheriff's assignee of certain notes given to him by the other defendants, in part payment of the purchase-money of certain real estate of the said S. S. Jamison, sold under execution; and to compel the payment thereof into court.

This bill resulted in the payment into court of the sum of $3439.39, and the appointment of an auditor to report distribution of the fund.

John Montgomery, in 1857, being then sheriff of Indiana county, sold the real estate of S. S. Jamison, under a writ of *venditioni exponas,* to James M. Richey and James M. Beatty, and accepted from Richey his two judgment notes for $2600 each, and from Beatty his two judgment notes of $250 each, in part payment of the purchase-money.

In December 1857, W. H. Weir, as attorney for different persons, had claims against the sheriff, arising out of the sale of Jamison's property, for about $4000, and for about $300, out of other official transactions; he also, as attorney for William Reed, the appellant, had a claim of $2300 against Montgomery in his private capacity. To secure these claims, the sheriff executed to Reed, through Weir, his attorney, who had notice of the consideration of the notes, the following assignment:—

"Whereas, H. W. Weir has a large amount of claims in his

hands for collection against me, as attorney for different persons; part of which is for money collected by me, in my official capacity as sheriff of Indiana county, and part for other debts contracted by me. And whereas, I hold two judgment notes on James M. Richey, dated December 7, 1857, each for the sum of twenty-six hundred dollars; one payable 1st of April 1858, and the other 1st September 1858, with interest: also, two other judgment bonds on James M. Beatty, dated 7th December 1857, one for two hundred and fifty dollars, and the other for two hundred and fifty-five dollars; one payable 1st April, 1858, and the other 1st September, '58, with interest. Therefore, and in consideration of my aforesaid indebtedness, and in payment thereof, I do hereby assign, transfer, and set over three thousand one hundred and five dollars of the aforesaid notes, to those said creditors to whom I am officially liable, as their said attorney may designate, to be distributed as he may see proper. And, if I fail to pay the balance of my official liabilities or indebtedness in his charge for collection, before the 1st September 1858, the time the last of said notes fall due, then, and in that event, I hereby assign and transfer whatever amount of said notes may be required to pay the same in full. I further assign and transfer three hundred dollars thereof to William M. Stewart, in payment of claims in his hands for collection, for which I am officially liable. The balance of said notes, I assign and transfer to William Reed, in payment of my indebtedness to him, hereby excepting and reserving three hundred and forty-five dollars to myself, out of the first money paid on said notes, to be applied to the payment of a claim now pressing collection against me."

Under this assignment, William Reed claimed to receive out of the fund in court, which was the proceeds of the notes assigned, the sum of $926.60, the ascertained amount of Montgomery's individual indebtedness to him.

The auditor rejected this claim, and distributed the fund to the judgment-creditors of Jamison; and the court below having confirmed his report, and decreed distribution accordingly, this appeal was taken.

*Foster*, for the appellant.

*Whites & Coffey*, for the sheriff's securities.

The opinion of the court was delivered by

THOMPSON, J.—The decree of the court on the bill in equity, in which the purchasers at the sheriff's sale of the property of S. S. Jamison, and the sheriff who made the sale, were made parties, resulted in bringing into court the purchase-money made on that sale, and the court appointed an auditor to distribute it among the

lien-creditors of the debtor according to their liens upon his pro-
perty.

William Reed, a creditor of the sheriff in his private capacity,
intervenes and claims something over nine hundred dollars of it,
by virtue of an assignment of the bonds and notes by the sheriff,
taken by him from the purchasers at that sale. If he is entitled
at all, it is not on the ground that he is a distributee, but that the
fund in court is his, and not liable to be distributed. The success
of this claim will, of course, depend upon his title under the
equitable assignment. Not having been a party to the bill in
equity, he is not estopped by that, nor perhaps is he to be affected
by the action of the court in appointing an auditor to make dis-
tribution. Treating it so, for the purposes of this investigation,
what title has he to the money?

The auditor finds, what was not, and could not be disputed, that
the money claimed by Reed was part of the purchase-money for
which the real estate of Jamison had been sold under execution,
and for which the sheriff took from the purchasers, bonds and
notes in his own name, instead of the money, and which he
assigned to Mr. Weir, the attorney for the appellant, for the
benefit of certain creditors for whom, as sheriff, he had collected
money and failed to pay; and "the balance of said notes," he
adds, "I assign and transfer to William Reed," &c., who, as has
been said, was a private creditor.

Reed's attorney, the active agent in procuring the assignment
of these bonds to secure other debts besides his, had notice of the
consideration of them, and this was notice to him. He acted not
only in the capacity of attorney in procuring the assignment, but
as his agent, for it would appear that Reed was not present at the
time of the assignment at all. Surely this notice to the attorney
who managed the business was notice to the principal. And the
import of the notice was, that the sheriff was transferring what
was not his own property, but what the law constituted him a
trustee to dispose of according to law.

This being so, can it admit of a doubt but that equity would
interpose to prevent the funds from being wrongfully converted or
appropriated to the use of a party who was a participator in the
bad faith of the trustee? In this case, there was nothing resem-
bling an equity in the appellant. Not only was there notice of
the character of the transaction by the sheriff, but there was no
present value given for the assignment; but it was to be applied
in extinguishment of an antecedent private debt due by the
assignor. The assignee was not a *bonâ fide* holder for a valuable
consideration: 5 *Casey* 160.

A sheriff has no right to traffic off money and property in his
hands by virtue of his office, and which belongs to other people.
Although his sureties might be answerable for his want of fidelity,

this does not prevent equity from following trust property as long as it can be identified, and reclaiming it for the benefit of those entitled: 3 *W. & S.* 280; 1 *Jones* 383. Both the creditors and sureties, in a case like the present, have such rights as entitle them to interpose. It is no answer to the former, to say that they can look to the sureties of the sheriff in case of default by him. They can and may do so; but if they can, by a shorter process, possess themselves of what belongs to them, it is right they should do so, in relief of what is, at most, a gratuitous obligation on part of his bail, and in many instances a burdensome and losing one.

We think the whole course of procedure in regard to this money was proper and commendable, and that the distribution reported and confirmed was unexceptionable.

Decree of distribution affirmed at the costs of the appellant.