SAMSON SHORT v. GEORGE D. MESSENGER, JR.

ERROR TO THE COURT OF COMMON PLEAS OF ELK COUNTY.

Argued May 7, 1889—Decided May 27, 1889.

1. When a point is put as a matter of law, and it is refused by the trial
judge without the reason therefor being given, it will be presumed that it
was refused because as matter of law it was not good, and not because
there was no evidence to support it.

(a) Carriers sold to Messenger in 1881 all the down timber on a tract of
land, to be paid for per cubic foot, a certain sum in a certain time and
the balance when the timber was sold, the vendors holding their inter-
est in the timber until they should receive payment therefor.

(b) Messenger paid the sum certain, cut and sold a portion of the timber
and stopped. In 1883, Short, a vendee of the land subject to the con-
tract with Messenger, erected a mill and cut and converted the balance
of the timber. In 1885 Messenger brought trespass on the case against
Short.

2. An objection to the form of the action was purely technical, and though
the suit was brought prior to the procedure act of May 25, 1887, P. L.
271, yet in the light of that legislation, the court would not reverse upon
the ground assigned, after a trial upon the merits.

3. On the trial of the cause, it was error for the trial judge to refuse to
charge, as matter of law, that "if the jury believe that the plaintiff
abandoned the job, the defendant was justified in taking off the timber
and would not be liable in damages therefor."

4. There being evidence that the plaintiff's father had charge of the timber
cutting for him, it was error to refuse the defendant's offer to prove
notice to the father, given on the premises by the defendant, to take off
the timber at once, as it was spoiling, or defendant would be compelled
to take it off himself.

Before PAXSON, C. J., STERRETT, GREEN, CLARK and
MITCHELL, JJ.

No. 127 July Term 1888, Sup. Ct.; court below, No. 32
January Term 1886, C. P.

On December 4, 1885, George D. Messenger, Jr., brought
case against Samson Short, to recover damages for cutting and
converting timber. Issue.

At the trial on May 25, 1887, the plaintiff proved an agree-
ment in writing, dated June 23, 1881, with G. A. Carrier and

others, by which Carrier and others sold to Messenger, the plaintiff, all the down timber, pine and hemlock, on their Toby tracts, within one fourth of a mile of Toby creek, at a certain price per cubic foot; in consideration of which the plaintiff was to pay to his vendors $400 in five months from the date of the contract and the balance when the timber was sold, the vendors to hold their interest in the timber until they received payment therefor. It was shown, also, that on January 20, 1882, Carrier and others had made a written contract for the conveyance of the Toby tracts to Samson Short, for $39,600, the contract providing that the sale was made subject to the contract with Messenger, the plaintiff, above referred to, "which contract is hereby assigned by the said parties of the first part hereto to the said Samson Short, and the amount heretofore received by the said parties of the first part from said Messenger, to wit, the sum of $400, is to be credited on the consideration of this agreement." The sale was consummated by a conveyance in February or March, 1882, and Short went into possession. Messenger had cut, rafted and sold in market, timber to the value of $322.38, when he stopped. In the summer of 1883, Short, the defendant, cut and converted the remaining down timber, covered by the plaintiff's contract, as was alleged, when the plaintiff brought this suit.

The foregoing facts appearing, in substance, in the plaintiff's case, the defendant offered to prove as follows:

That he gave notice to George D. Messenger, Sr., who was the agent of the plaintiff, and who, under the evidence in this case, did all the business in relation to that timber matter, and who was there upon the premises at the time carrying on the business, to take off this timber at once, or proceed to take it off as fast as possible; that the timber was spoiling, and that if he didn't do it that he, Short, the defendant, would be compelled to take it off himself,—all there was left fit for use.

Plaintiff objected: 1. We controvert the fact that he was such general agent, if notice to the general agent would be sufficient, as would be notice to the plaintiff. 2. We object to it because, in a case like this, even notice to the general agent would not affect the principal. I said we controverted the facts, or that we deny the facts, because we do not agree to the facts as they say.

By the court: I do not think it would be evidence. Offer refused; exception.[9]

At the conclusion of the testimony, the court, MAYER, P. J., having stated the evidence relating to the contracts, etc., charged the jury, in part, as follows:

[The timber consisted principally of hemlock in the proportion of one fourth pine and three fourths hemlock.][7]

\*     \*     \*     \*     \*     \*     \*     \*

It is alleged on the part of defendant, that Messenger told Short that he should go on and take off the remaining timber, as it was worth nothing to him. Short and several other witnesses testify to this statement, but it is denied by Messenger. Short went on and cut into logs the down timber, and this suit is brought to recover damages for cutting and removing this timber, and manufacturing it into lumber and disposing of it.

\*     \*     \*     \*     \*     \*     \*     \*

[By the terms of the agreement between the Carriers and Messenger, no time was fixed for the removal of the timber. In order that the right of Messenger to remove this timber might be terminated, it was the duty of the Carriers or their assignee, Short, to give notice to Messenger to remove the timber within a reasonable time after notice, and, in case Messenger neglected or refused compliance with such notice, Short could declare his right of removal ended and proceed to remove the timber himself. But there is no evidence in this case going to show that Messenger, the plaintiff, was ever notified by Short to remove the timber. Consequently, Short could not remove the timber and appropriate it to his use without accounting for whatever the value of this timber may be, if, after deducting the contract price that Messenger was to pay for the timber that was taken off by him, as well as that which was taken off by Short, anything is due to Messenger.][8]

We have been requested to instruct you upon the following points submitted by the defendant:

1. That under the pleadings and facts, as they appear in evidence, an action on the case cannot be sustained.

Answer: This point is refused.[1]

2. That by the contract between the plaintiff and Carriers, the plaintiff acquired no such interest in the timber as would

enable him to maintain any form of action against the owners of the land for the timber, until by the terms of the agreement the owners of the land had been fully paid for the same; and, there being no evidence of payment or tender of payment. according to the terms of the contract, the verdict must be for the defendant.

Answer: This point is refused.[2]

5. That action on the case lies to recover damages which are consequential in their nature and directly connected with some act or omission of the defendant, but not for damages which are the direct result of an act and expected to follow therefrom, or the immediate object of such act; and, under the facts in this case, there are no damages shown of such a nature as will sustain an action of trespass on the case.

Answer: This point is refused.[3]

6. That the timber being down, if the jury believe that the plaintiff was dilatory or negligent in getting the same off or for market, the defendant would be justified in rescinding the agreement and cutting and taking the same for his own protection, especially after having notified the plaintiff to take off said timber.

Answer: This also is refused.[4]

7. That if the jury believe from the evidence that the plaintiff abandoned the job, the defendant was justified in taking off the timber and would not be liable in damages therefor.

Answer: This point is also refused.[5]

9. That if the jury find from the evidence in this case, that by reason of the negligence or non-fulfilment of the contract by the plaintiff, the defendant has suffered damages, he, the defendant, is entitled to recoup the same against any claims of the plaintiff.

Answer: This point is refused, because there is no evidence going to show that the defendant has suffered any damages by reason of the negligence or non-fulfilment of the contract by the plaintiff.[6]

The jury returned a verdict for the plaintiff for $606.46. A rule for a new trial having been discharged, judgment was entered on the verdict, when the defendant took this writ, assigning as error:

1–6. The answers to defendants' points.[1to6]

7, 8. The portions of the charge included in [ ] [7 8]

9. The refusal of the defendant's offer.[9]

*Mr. George A. Rathbun* and *Mr. S. M. Brainerd,* for the plaintiff in error.

*Mr. C. H. McCauley* (with him *Mr. John G. Hall*), for the defendant in error.

OPINION, MR. CHIEF JUSTICE PAXSON:

While the question is not entirely free from doubt, we are not prepared to say that an action on the case will not lie in this instance. It is clear that both the plaintiff and the defendant had an interest in the timber which is the subject of this controversy. It is true, the interest and rights of the plaintiff below were paramount to those of the defendant, yet the fact remains that each had an interest; and I do not see how an action of trespass would lie by one against the other. The objection is purely technical; and, while this suit was commenced prior to the procedure act of 1887, we must consider an objection to the form of action in the light of that legislation. Aside from this, an appellate court is slow to reverse for an error in the form of action, after a trial upon the merits.

The defendant's seventh point called upon the court to instruct the jury: "That if the jury believe that the plaintiff abandoned the job, the defendant was justified in taking off the timber and would not be liable in damages therefor." The court refused this point. I do not understand it to have been refused because there was no evidence to sustain it. The learned judge does not say so, while, in his answer to the defendant's ninth point, he expressly puts his refusal to affirm upon the ground that there was no evidence to sustain the point. The seventh point was well put, as a matter of law, and if there was no evidence that the plaintiff had abandoned the job, the refusal of the point might well have been put upon that ground. It is no slight matter for us to go through 193 pages of testimony to see if there was evidence of abandonment by the plaintiff, and if the learned judge below, who must have known how this matter stood, does not say so, we have a right

to presume the point was refused because it was not good as a question of law. Aside from this, there was some evidence from which the jury might infer an abandonment.

If there was error in that portion of the charge in which the learned judge said, " The timber consisted principally of hemlock, in the proportion of one fourth pine and three fourths hemlock," it will doubtless be corrected upon another trial.

We think it was error to reject the offer of evidence referred to in the last specification. If, as the defendant offered to prove, he " gave notice to George D. Messenger, Sr., who was the agent of the plaintiff, and who, under the evidence in this case, did all the business in relation to that timber matter, and who was there upon the premises at the time carrying on the business, to take off this timber at once, or proceed to take it off as fast as possible; that the timber was spoiling, and that if he did not do it that he, Short, the defendant, would be compelled to take it off himself—all there was fit for use," it would be a good defence. It is true, the offer was objected to by the plaintiff because he controverted the facts of which the point was predicated. Had the facts assumed in the point depended upon the defendant's evidence, the objection would have been well taken. Such is not the case, however. It appears from the testimony of the plaintiff himself that George D. Messenger, Sr., was the agent upon the ground, and had the whole charge of this timber business. The plaintiff was seldom on the ground himself, and in his absence his father, George D. Messenger, Sr., represented him. This fully appears by the following question and answer: " Q. Now then, was there any limit to his power to represent you in your business up there about that business, as to cutting timber, or to see whether it was gotten out? A. I don't know that there was in that respect." If the notice referred to was given upon the premises, to the plaintiff's managing agent, we are unable to see why such fact should not have gone to the jury. The notice was as to a matter directly relating to the business. In such case, a notice to the agent would have been notice to his principal. The defendant was not bound to lie by and see the timber rot upon the ground. The taking of it off had already been greatly delayed. It had been going on through 1881, 1882 and part of 1883. It is a matter known to every one that timber, and especially hemlock

timber, soon decays and becomes unmerchantable when left to lie upon the ground. And it is a question, whether allowing timber to lie and rot, if the fact be so, would not be some evidence of an abandonment of the contract, as set forth in the defendant's seventh point.

We notice no error in the remaining assignments.

Judgment reversed and a venire facias de novo awarded.