# E. C. Rice *v.* Charles E. Jackson, G. Heide Norris and Amasa Mason, Copartners, Appellants.

*Partnership—Construction of railroad—Construction company.*

An agreement among several persons " to promote the construction " of a railroad, and to receive in return the stocks and bonds of the railroad company, and to sell the same and divide the profits, is a partnership agreement.

*Partnership—Power of partner—Trading and nontrading partnership.*

In all partnerships, whether trading or nontrading, there is an implied power in each partner to bind the firm by any contract necessary to carry out the purpose for which the partnership was formed, notwithstanding secret limitations upon the powers of the partners in the partnership articles.

*Partnership—Secret limitation upon powers of a partner—Construction company.*

A partner in a firm organized for the purpose of constructing a railroad may make a valid contract binding upon his associates, with a civil engineer to locate and survey the railroad, although in the partnership agreement it is provided that no contract shall be made by any member of the firm unless unanimously approved by the partners, if the engineer had no notice or knowledge of the limitation on the contracting partner's authority.

*Partnership—Contract—Agreement to pay the debt of another person.*

In the absence of express authority a partner has no power to bind his copartner by an agreement to pay the debt of another person.

*Principal and agent—General agency—Limitation upon agent's powers.*
It is the duty of a person dealing with an agent whose calling is not public, and who is merely employed to conduct a particular business, to know the extent of the agent's authority, and if without knowing it he contract with such agent, he assumes the risk of disaffirmance of the authority of the agent by the principal, if the agent has exceeded that authority.

Argued April 5, 1895.   Appeal, No. 198, Jan. T., 1895, by G. Heide Norris, one of the defendants, from judgment of C. P. No. 2, Phila. Co., Dec. T., 1891, No. 184, sustaining exceptions to report of referee.   Before STERRETT, C. J., GREEN, MITCH-ELL, DEAN and FELL, JJ.   Affirmed for part of judgment.

Assumpsit to recover on a contract for locating and surveying a railroad.

The case was referred by agreement to N. Dubois Miller, Esq., as referee.

The facts are fully stated in the opinion of the Supreme Court.

The referee found for the defendants.

Exceptions to the referee's report were sustained by the court in an opinion by JENKINS, J., and judgment entered for plaintiff for $5,000, with interest from September 28, 1889.

*Errors assigned* were in sustaining exceptions to referee's report.

*G. Heide Norris* and *John G. Johnson*, for appellant.—An agent acting under a special power cannot bind his principal beyond the terms of it.   In order to charge a principal the agent's authority must be shown: Hays v. Lynn, 7 Watts, 524; Moore v. Patterson, 28 Pa. 505; Strohecker v. Bank, 6 Watts, 96; Layng v. Stewart, 1 W. & S. 222; Savings Bank v. Hagerstown Bank, 36 Pa. 498; Winship v. U. S. Bank, 5 Peters, 561; Williams v. Getty, 31 Pa. 461; Union Refining Co. v. Bushnell, 88 Pa. 89; Ins. Co. v. Shultz, 82 Pa. 51.

In no case are the declarations of an agent evidence of his authority.   The extent of the agency must be proved to admit declarations of agency: Grim v. Bonnell, 78 Pa. 152; Tele-phone Co. v. Thompson, 112 Pa. 118.

The same rule holds good in regard to proof of partnership: Edwards v. Tracy, 62 Pa. 374; Walker v. Tupper, 152 Pa. 1.

The syndicate agreement did not constitute a contract of partnership. The agreement was made to promote the construction of the railway, and while profits are mentioned, the promoters were not to be entitled to them until capitalists were found to undertake the actual construction. There could be no profits otherwise: Lindley on Partnership (1860), star pp. 23–30; Reynell v. Lewis, 15 Meeson & Welsby, 517; Capper's Case, 1 Simons (N. S.), 178; West Point Foundry Co. v. Brown, 3 Edwards's Ch. (N. Y.) 284; Pollock on Partnership, 5.

But even if the syndicate agreement constituted a partnership, (a) the nature of the business was not that of a trading partnership, (b) there is no usage in such a case as this as to the authority of one partner to bind the other, (c) there was no necessity for Mason's contract with Rice, (d) there was no holding out as a partner by Norris. Therefore Rice was bound to inquire as to the extent of Mason's authority and to know the limitations upon it: Parsons on Partnership, 4th ed. p. 36; Judge v. Braswell, 13 Bush, 67; Lerch v. Bard, 162 Pa. 307; Tanner v. Hyde, 31 Pacific Rep. 344; Deardorf v. Thatcher, 78 Mo. 128; Lindley on Partnership, star pp. 192, 194, 214; Pollock on Partnership, 27.

Rice cannot recover the $2,500 for past services in any event, as that was the debt of the previous syndicate, and one partner cannot bind his associates for such a debt, nor can an agent so bind his principal: McQuenans v. Hamlin, 35 Pa. 517; Shaaber v. Bushong, 105 Pa. 514; Maule v. Bucknell, 50 Pa. 52; Shoemaker v. King, 40 Pa. 107; Miller v. Long, 45 Pa. 350; Stevenson v. Hoy, 43 Pa. 191; 1 Am. & Eng. Ency. of Law, 364.

The agreement of January 23, 1888, was only a memorandum not binding on anybody until ratified, and Rice understood it to be such.

*Albert B. Weimer*, for appellee.—Mason was a general agent of the syndicate " to take charge of the general business of the syndicate, attend to all correspondence, contracts, and subsidies, procure rights of way, terminals and such aids as shall be for the benefit of the Paducah & Mt. Vernon Railway." Any one dealing with him within the scope of his employment

could not be affected by a secret limitation upon his authority : Chouteaux v. Leech, 18 Pa. 224 ; 1 Am. & Eng. Ency. of Law, 330 ; Butler v. Maples, 9 Wall. 766 ; Insurance Co. v. McKane, 96 U. S. 84 ; Le Roy v. Beard, 8 How. 451.

The syndicate agreement of December 29, 1887, constitutes a partnership between the defendants : Reynell v. Lewis, 15 M. & W. 517 ; Wyld v. Hopkins, 1 Sim. N. S. 178 ; Stern v. Harris, 40 Minn. 209 ; Meehan v. Valentine, 145 U. S. 611 ; Campbell v. Sherman, 8 N. Y. 630 ; Hackett v. Stanley, 115 N. Y. 625 ; Tradesmen's Bank v. Astor, 11 Wend. 87 ; Andrews v. Conger, 131 U. S. CLXXXIII.

In all partnerships whether trading or nontrading, commercial or noncommercial, there is an implied power in each partner to bind the firm by any contract necessary to carry out the purpose for which the partnership was formed. This rule is especially applicable to a contract under which a servant is employed to perform the very act contemplated by the partnership agreement : Pollock on Partnership, 28 ; Perry v. Randolph, 6 Smedes & Mar. (Miss.) 335 ; Coons v. Renick, 11 Tex. 134 ; Manville v. Parks, 7 Colorado, 123 ; Lynch v. Thompson, 61 Miss. 354 ; Nichols v. Chearis, 4 Sneed (Tenn.), 229 ; Hoffman v. Toll, 28 N. E. Rep. 557 ; Everett v. Chapman, 6 Conn. 347 ; Porter v. Wilson, 113 Ind. 350 ; Hawkens v. Bourne, 8 Meeson & Welsby, 704 ; Tradesmen's Bank v. Astor, 11 Wend. 87 ; Hoskins v. Eliot, 62 Pa. 393 ; Gavin v. Walker, 14 Lea (Tenn.), 643.

Plaintiff was entitled to recover the whole sum of $5,000 under the agreement of January 23, 1888. The payment of this indebtedness was a condition precedent to Rice's entering the employ of the new syndicate and this payment was therefore no less part of the compensation to be paid him by the new syndicate than his salary of $2,500 per annum. Such a contract is not within the statute : Willis v. Cutter, 61 N. H. 405 ; Arnold v. Stedman, 45 Pa. 186.

OPINION BY MR. JUSTICE DEAN, October 7, 1895 :

Plaintiff, on 16th of November, 1891, sued defendants to recover $5,000 with interest from 28th of September, 1889. He was a citizen of Missouri, and civil engineer by profession. It appears that during the years 1886 and 1887 he was employed

by C. E. Jackson, one of defendants, A. E. Quintard and others, to survey a railway line in Illinois for the Paducah & Mt. Vernon Railway Company, an Illinois corporation chartered in December, 1886; he was also to procure releases for right of way and contributions towards its construction from those along the line benefited. In 1887, prior to December of that year, he did considerable work under the authority given him, surveying and locating about two hundred miles of line; then those who employed him were unable to carry their project to consummation and Rice abandoned further work. Afterwards, on December 29, 1887, an agreement was entered into between these three defendants by which, to quote the agreement:

" The said parties agree to form a syndicate to promote the construction of the Paducah & Mt. Vernon Railway and its extensions upon the following terms and conditions:

" First. The said G. Heide Norris and said Charles E. Jackson agree to furnish funds necessary to meet the preliminary expenses which have been or shall be made or incurred incidental to the franchises, surveys, rights of way or subsidies to an amount not exceeding $12,500 each, of which sum $7,500 is to be first paid by each of them in the following manner:

" The sum of $7,500 having been already expended by the said Jackson; the sum of $7,500 to be provided by the said Norris shall become due and payable at such times and for such purposes as shall be determined jointly by the said Mason and Norris. And the said Jackson and Norris agree to provide the further sum of $10,000 to be paid equally and proportionately if and when the same or any part thereof shall be called for unanimously by said syndicate.

" Second. The said Mason agrees to take charge of the general business of the syndicate, attend to all correspondence, contracts and subsidies, procure rights of way, terminals and such aids as shall be for the benefit of the Paducah & Mt. Vernon Railway, and attend to the marketing of its bonds, and will if desired contract with the Paducah & Mt. Vernon Railway Company for and in consideration of all the franchises and assets of said corporation to construct and equip said railway according to the estimates from Cypress Junction, on the Louisville & Nashville Railway, to a point on the Ohio River, at or near the town of Brooklyn, on or before the 1st day of January, 1889,

and also to construct the road to the city of Mt. Vernon, Indiana, as well as the road from Golconda to Eldorado, and if such construction in the unanimous judgment of the syndicate be deemed necessary, and will hold said contract or contracts as concessionaire and trustee for the benefit of the syndicate, and dispose of it or them in such mode as may be unanimously agreed upon by the syndicate.

" Third. From the net profit of the enterprise the said Norris and Jackson shall first be repaid the amounts advanced by them respectively under the terms thereof, and the balance of said net profits shall be divided equally share and share alike between said Norris, Jackson and Mason.

" Fourth. The office of the said syndicate shall be in the city of New York, under the care of said Mason, who shall see that proper books of account are kept, showing all the disbursements and full records of all contracts and agreements entered into on behalf of the railway company, which shall be opened to the inspection of the syndicate at all times, for which and other services for the syndicate, he shall receive a salary of $250 per month, when engaged on its business, and expenses, when called away by unanimous direction of said syndicate on its said business.

" Fifth. No contract shall be made, or engagements entered into, or debts incurred, by any member of the syndicate, except as already provided, unless unanimously approved; nor shall any discretion be vested in any member unless by express authority unanimously given."

Then follows, appended to the agreement, this additional stipulation by Mason:

" In consideration of the agreement this day executed by myself, Charles E. Jackson, of Middletown, Conn., and G. Heide Norris, of Philadelphia, Pa., covering a proposed syndicate to build the Paducah & Mt. Vernon Railway and other matters, I agree to turn over for the benefit of the said syndicate, all interests and rights that I may have or possess in the charters, stocks, bonds, contracts, subsidies, rights of way, or other matters in any way connected with said Paducah & Mt. Vernon Railway, or in anywise appertaining thereto.

" New York, December 29th, 1887.      AMASA MASON."

On the same day of the agreement, the three copartners met and adopted this resolution, a minute thereof in writing being made by Norris, who acted as secretary :

" Sixth. As questions may arise regarding the relation of engineer Rice and the Paducah and Mt. Vernon Railway, in the future, and especially in regard to the payment which shall be made to said Rice for past and future services, the whole matter is referred to Mr. Mason with power to treat with Mr. Rice, subject to the approval of the syndicate, providing no obligations for such payment shall be made or assumed to become due and payable until there shall be in the hands of the syndicate or railway company unappropriated surplus funds sufficient to meet the same, together with other like charges, but all actual disbursements of said engineer duly authorized by the syndicate shall be repaid or provided for in cash."

The managing partner, Mason, then went to St. Louis, where Rice resided, and negotiated with him for his services in completing the work which he had originally undertaken for Jackson, Quintard and others, which negotiation resulted in the following writing delivered to Rice :

" St. Louis, Jan. 23rd, 1888.

" There is a new syndicate formed, composed of Messrs. C. E. Jackson, of Middletown, Conn., G. Heide Norris, Philadelphia, Penna., and Amasa Mason, Brooklyn, New York, to provide not to exceed twenty-five thousand dollars for the preliminary expenses to secure the construction of the Paducah & Mt. Vernon Railway, etc. Mr. Mason holds one third interest of the new syndicate and the control for his services to be rendered. E. C. Rice is to have one third of said Mason's interest for assisting him, but he is not to be called for any money, all disbursements to be paid by the syndicate.

" The said syndicate agree to pay E. C. Rice out of the $25,000 above specified for past services, twenty-five hundred dollars, and for services to be rendered in this preliminary work, but not engineering work, twenty-five hundred dollars and all expenses, services to be rendered during the year 1888.

" (Signed)                    Amasa Mason."

Rice then proceeded to work, got releases for over thirty miles of the line, secured contributions from the town of Gol-

conda, and valuable boat terminals on the Ohio river ; he also prepared profiles of the line, estimates of the cost of construction and specifications for construction contracts. On March 11, 1888, in response to a telegram from Mason, he went to New York to assist in completing the framing of contracts for building the line, at which he worked from 16th to 19th of March, and then, accompanied by one Hopkins, the principal contractor, he went to Philadelphia and called upon Norris, another of defendants ; in the conversation with reference to the work between him and Norris, the latter denied Mason's authority to make the agreement of January 23, 1888, and asked Rice to accept compensation for his work out of the expected profits of the enterprise ; this Rice peremptorily declined to do, and declared he would hold the syndicate or copartners to the terms of the Mason agreement with him. He afterwards met both Norris and Jackson in Philadelphia and New York, and assisted in the preparation of the construction contract, which on March 26, was duly executed. In the meantime, on March 21, Rice received from Jackson $125, on account of expenses, which Jackson said had been given him for that purpose by Norris. Soon afterwards Mason went to London for the purpose of negotiating a loan to be expended in the construction of the railway, and to aid him took with him all the papers prepared and obtained by Rice in furtherance of the enterprise. As a fact found by the referee, Rice had no knowledge of the terms of the partnership agreement of 29th of December, 1887, when he entered into the agreement with Mason of January 23, 1888.

On 28th of September, 1889, Rice not having been paid either of the sums of $2,500 mentioned in the Mason agreement, made demand for payment on Norris in Philadelphia, who refused ; thereupon he brought suit against defendants ; Norris was the only one on whom service was had, and he appeared and pleaded non assumpsit. The parties then referred all matters in controversy to N. Dubois Miller, Esq., under the act of 1874. From the facts, the referee's conclusions of law were : 1. The syndicate agreement constituted a contract of partnership. 2. The limitations of the agreement upon the authority of the partners to contract indebtedness in behalf of the partnership were binding upon the plaintiff. 3. Norris is not liable upon the contract sued upon. 4. He is not liable to plaintiff in assumpsit.

On the report coming into court, exceptions were filed to the referee's conclusions of law, which the court sustained, and entered judgment for plaintiff for the amount of his claim, from which judgment G. Heide Norris brings this appeal, assigning seventeen errors. As to the referee's findings of facts, they are fully warranted by the evidence, and we adopt them. All the other assignments of error are disposed of by a determination of the correctness of the conclusions of law arrived at by the referee and the court below.

In support of his second conclusion, that the limitation on Mason's authority to contract for the partnership of which he was a member also bound Rice, the referee draws the distinction between the answerability of the principal for the contracts of a general agent, and his answerability for those of his special or personal agent. As to the first, such as factors and those of like character, who hold themselves out to the public as general agents for all who choose to employ them, third parties dealing with them have a right to assume that within the scope of the business intrusted to them there are no secret limitations on their authority. But it is otherwise as to one whose calling is not public, and who is merely employed by the principal to conduct the particular business out of which grows the contract sued upon ; in this last case, it is the duty of the party dealing with such agent for the first time to know the extent of the agent's authority ; if without knowing it, he contracts with such agent, then he assumes the risk of disaffirmance of the authority of the agent by the principal, if the agent have exceeded that authority. This, in substance, is a correct statement by the referee of the law applicable to principals and agents. If Mason had been a mere agent of the partnership, he would have had no authority except such as his principal conferred upon him, and any third person, dealing with him for the first time, would have been bound to ascertain from the terms of his appointment the extent of his authority.

But Mason was not a mere agent ; he was a member of the copartnership formed to carry to completion an important business project. Are secret restrictions upon the authority of a partner, who acts within the scope of the partnership business, binding upon third parties ? The learned referee concedes they are not as to purely commercial enterprises, but is of opin-

ion the rule is not applicable to noncommercial partnerships such as the one in question, and a note to Parsons on Partnerships, 4th edition, p. 86, is cited as follows: " As to acts within the scope of the partnership, a fundamental distinction exists between commercial or trading partnerships and nontrading partnerships, arising out of the fact that in a nontrading partnership there is no general power in the partners to do such acts, as are customary in carrying on business."

This is a correct statement of the general rule, directly traceable to the law merchant; and the power of one partner to bind his copartners was long confined to strictly trading partnerships; yet, in recent years, there have been many departures from it, not only in England, but in this country. The reason for the general rule is stated by Chief Justice MARSHALL in Winship v. Bank, 5 Peters, 561 : " This is a general power essential to the well conducting of business, which is implied in the existence of a partnership. When, then, a partnership is formed for a particular purpose, it is understood to be in itself a grant of power to the acting members of the company to transact its business in the usual way. This is a general authority held out to the world, to which the world has a right to trust. The articles of copartnership are perhaps never published. They are rarely if ever seen except by the partners themselves. The stipulations they may contain are to regulate the conduct and rights of the parties as between themselves."

The rule and the reason for it had their origin in an age when trading partnerships formed the large majority of business ventures. Now, when manufacturing, mining and carrying enterprises have reached such large numbers and proportions the same reasons necessarily invoke the same rule ; its rigorous confinement at first to trading enterprises, on grounds of public policy, should give way to the necessity of its application to other kinds of business which now affect the public interests as seriously as trade and commerce. In Hawkins v. Bourne, 8 M. & W. 703, the case of a joint stock company formed to work a mine, the work was carried on by directors for the benefit of other persons ; the defendant was a partner in the operation under an agreement that the directors were to buy only for cash, and not to contract upon credit ; the plain-

tiff supplied goods on orders of the resident agent without knowledge of the secret stipulation. PARKER, B., says: "There was evidence that he (defendant) was a complete partner with the directors in working the mines in the manner they were worked; and one partner, by virtue of that relation, is constituted a general agent for another as to all matters within the general scope of the partnership dealings, and has communicated to him, by virtue of that relation, all authorities necessary for carrying on the partnership, and all such as are generally exercised by partners in that business in which they are engaged. Any restriction which, by agreement amongst the partners, is attempted to be imposed upon the authority which one possesses as a general agent for another, is operative only between the partners themselves, and does not limit the authority as to third persons, who acquire rights by its exercise, unless they know that such restriction has been made." The rule thus applied to a coal mining partnership is in substance the law merchant rule applicable to trading partnerships. And WILLIAMS, J., says, in Hoskinson v. Eliot, 62 Pa. 393, the case of a brick manufacturing partnership: "But while it is conceded that this is the law as applicable to commercial partnerships, it is insisted it does not apply to partnerships formed for mechanical or manufacturing purposes. But no such distinction is suggested or recognized in any of the adjudicated cases or text books, and there is no foundation for it in the necessities or usages of these partnerships. The necessity for borrowing money to carry on the business of a manufacturing partnership may be as great as it is in order to carry on the business of one that is strictly commercial." While here the assertion that no distinction is recognized or suggested in the adjudicated cases is perhaps too broad, the ground which would warrant a distinction, the necessity of the contract for the promotion of the partnership business, is put forth as the real reason for the application of the rule for the protection of third parties.

In view of the undisputed facts before us, is there any reason for applying a different rule to the contracts of this partnership than to those of a trading partnership? The partnership was that of a railroad construction company; a business as common, almost, as railroad building itself.

What is the nature of the partnership? By their agreement,

they say it is a syndicate to promote the construction of the Paducah & Mt. Vernon Railway; in other words, a construction company; a cash capital of $25,000 is to be contributed by the partners. Mason is to be the active partner "to take charge of the general business of the syndicate;" attend to correspondence, contracts and subsidies, procure rights of way, terminals and such aids as shall be for the benefit of the Paducah & Mt. Vernon Railway, and attend to the marketing of its bonds. Obviously the profits of the partnership were to be realized from the sale of the securities, the bonds and stock of the road; the capital provided, $25,000, would not construct the road; this was doubtless intended for preliminary surveys and expenses; to advance the enterprise a single step towards success, the very services contracted for by plaintiff must be performed by somebody; no bond could be marketed, no share of stock sold with a railway line only in the air; the line must be first run and located on the ground, rights of way and terminals secured, before the railway could have an existence, except on paper. Not only was the work to be done by Rice within the scope of the partnership enterprise, but it was an absolute necessity to its birth; therefore, the authority to Mason, one of the partners, to make a reasonable contract with Rice which should bind the partnership was a necessary implication from his relation to his copartners; Rice had a right to rely on this authority and contract with him. The referee has found as a fact that he knew nothing of any restriction on Mason's authority; this being so, he is not bound by it, for as long as Mason acted within the scope of his powers there was nothing to put him upon inquiry.

The Mason agreement specifies that the partnership is to pay Rice $2,500 for past services; it is conceded these services were performed for others than the partnership of which appellant is a member, and long before his partnership had an existence; so far as appears, there was neither legal nor moral obligation on the defendant to pay this debt owing by strangers to Rice. The authority to a partner is to make contracts for the promotion of the partnership business, not to contract to make gifts to servants of the firm; such an obligation is not within the scope of his authority to impose upon his copartners. Although the services for which payment is sought under this

contract were performed in the preliminaries to the construction of this railway, the contract, either express or implied, on which they rested, was with wholly different parties; Rice was therefore bound to know that Mason without express authority could not make his copartners answerable for the debt of others.

Therefore we hold:

1. Mason, as concerned third persons ignorant of the restriction, had authority to bind his copartners by this contract to the extent of incurring such a debt for the advancement of the partnership business.

2. The contract to pay Rice $2,500 for services to be rendered for the year 1888 was reasonably necessary for the advancement of the partnership business, and such services were rendered.

3. The contract, in so far as it stipulates for the payment to Rice of $2,500 for past services to others before the existence of the partnership, was not within the scope of Mason's authority as a partner to make, and Rice cannot recover therefor in this action.

To this extent, the decree of the court below is affirmed, and it is directed that judgment be entered on the report of the referee in favor of plaintiff and against defendants for the sum of $2,500, with interest from September 28, 1889, the date of plaintiff's demand. Further it is directed that defendants pay the costs.