August Langenheim and Charles W. Cochran, trading as Langenheim & Cochran, Appellants, *v.* The Anschutz-Bradberry Co., Owner, and H. S. McAllister, Contractor.

*Agency—Province of court and jury.*

Where an agency rests in parol and there is no dispute as to its terms and no ambiguity which needs explanation, it is for the court and not for the jury to determine its meaning and effect.

*Agency—Extent of powers of agent—Burden of proof.*

A party who attempts to avail himself of the acts of an agent must, in in order to charge the principal, prove the authority under which the agent acted. The burden of proof lies on him to establish the agency and its extent.

*Mechanic's lien—Agency—Architect—Implied powers of—Act of May 18, 1887, P. L. 118.*

A supervising architect as such has no authority over the payment of debts incurred in the construction of a building or to determine in what manner such debts shall be paid or secured, nor can such employment be constructively enlarged so as to include that power and duty. His authority relating solely to the erection of the structure, and the character of the work and material employed, he is not an agent within the meaning of the act of May 18, 1887, P. L. 118, to receive notice of an intention to file a mechanic's lien for additions.

*Mechanic's lien—Notice of intention to file lien—Act of May 18, 1887, P. L. 118—Sufficiency thereof.*

While no particular form of words is necessary to give the notice required by the act of May 18, 1887, of an intention to file a mechanic's lien for additions, such notice to be effective should be framed in language sufficiently clear and definite to inform the person notified that the materialman intends to file a lien under the act of assembly for the price of the material furnished by him in the construction of the building, and notice by material-men that "if we do not get our money at that time we would look to the building for the payment of our bill" is not sufficient.

Argued April 8, 1896. Appeal, No. 72, April T., 1896, by Langenheim & Cochran, plaintiffs, from judgment of C. P. No. 2, Allegheny Co., No. 126, Jan. T., 1894, in sci. fa. sur mechanic's lien against the Anschutz-Bradberry Co., owner, and H. S. McAllister, contractor, defendants, ordering nonsuit. Before RICE, P. J., WILLARD, BEAVER, REEDER, WICKHAM, ORLADY and SMITH, JJ. Affirmed.

Sci. fa. for materials amounting to $848.95 furnished in the construction of an addition to an iron foundry. Before MA-GEE, J.

The facts as stated in the opinion of this court were as follows:

This is an appeal by Langenheim & Cochran from the refusal of the court of common pleas of Allegheny county to take off a compulsory nonsuit.

The appellants filed a mechanic's lien against the Anschutz-Bradberry Company, a corporation, as owner or reputed owner, and H. S. McAllister as " the contractor at whose instance and request the work was done and materials furnished," claiming $848.95 for lumber and mill work furnished for the erection of an addition to an iron foundry in the city of Allegheny. It is stated in the claim that notice of the appellant's intention to file a lien was given at the time of furnishing the material to R. G. Vandevort, agent and architect of the owner. On the trial of the scire facias, C. W. Cochran, one of the plaintiffs, testified, with reference to the notice to Vandevort and his agency, as follows:

Q. Did you have any communication of any sort directly or indirectly with the Anschutz-Bradberry Company about furnishing of materials, etc.? A. We had no communications with the Anschutz-Bradberry Company during the construction of the building. Q. Directly or indirectly? A. No, neither way that I . . . . Q. In regard to this building who did you get your orders from? A. From the architect, Mr. Vandevort. Q. Did he come to your place? A. Yes, sir. Q. How often? A. Well he was there a number of times. Q. Do you know whether he did or did not make any changes in the building? A. Yes, sir, Mr. Vandevort ordered changes in the work. Q. Did you carry them out? A. Yes, sir. Q. Do you know whether Mr. Vandevort made out estimates for the payment of money? A. Well, I was told he made one estimate; he told me himself. Q. When was it he told you that? A. I don't know exactly the date; from the 24th to 28th of March, 1893. Q. What did you tell him on that occasion about payment of money? A. I asked Mr. Vandevort how he made his estimate, whether he made it all to the general contractor, or the sub-

contractors, pro rata shares, and he said he had made it all to the contractor, McAllister, and *I told him if we didn't get our money at that time we would look to the building for the payment of our bill.* Q. You said that changes were made in the building by Mr. Vandevort; was extra material ordered by him? A. There was an extra window frame and sash and the roof joists were changed; the original was $2 \times 8$ and then he changed them to $2 \times 10$ . . . . the sides. [Asked how much of the material had been furnished when he gave the notice to Mr. Vandevort, he answered], Well as near as I can tell about half of the material had been furnished when that notice was given, about half the whole amount of the material; perhaps a little fraction more. Q. Did you have a lump contract for furnishing this material and doing this work? A. Yes, sir. Q. You did? A. Yes, sir; that is for the original contract and when. . . . Q. And the only work, as I understand, you didn't have any lump contract for, was the extra work shown by footed bill; is that correct? A. Yes, sir, that is correct.

R. G. Vandevort was called on behalf of the plaintiffs and testified as follows:

Q. State whether or not you were employed to supervise the erection of this addition to the Anschutz-Bradberry Building. A. Yes, sir; I was employed for that purpose. Q. Did you actually supervise the work of the building? A. Yes, sir. Q. By whom were you employed? A. By the Anschutz-Bradberry Company. Q. State whether or not it was part of your duty to make out estimates for payment? A. Yes, sir; I made out estimates, or one estimate, for payment. Q. Was payment made according to it by Anschutz-Bradberry Company? A. I believe so; I never heard anything to the contrary.

The foregoing is all the testimony in the case concerning the authority and actions of Vandevort and the notice to him. It was not alleged that Vandevort communicated the statement of Cochran to any of the directors, officers or agents of the defendant company, or that any other notice was given. The plaintiffs were subcontractors under McAllister and they had no communication with the defendant company. There is no testimony that Vandevort made or was authorized to make any contract for the defendant; he was employed to supervise the erection of the addition, which included the duty of making

estimates for payments to the contractor from time to time, during the progress of the construction, based on the relative value of the work and material in the building; nor is it asserted that he claimed to have any further authority. He neither received nor paid out money for the construction of the building and had nothing to do with the financial affairs of the company. The architect did nothing to lead the plaintiffs to believe he had authority to receive notices for the defendant, or that he would transmit to its officers any notice he might receive; and no inquiry was made by the plaintiffs as to his right or duty in the premises. The principal contractor was to provide the work and materials for the addition, and the plaintiffs made their agreement with him for what they were to furnish toward the erection, and its price, and he was to pay them. They evidently understood that the owner retained no authority over the subject-matter of their contract, and acted accordingly in making it.

*Error assigned* was refusal to take off nonsuit.

*Chas. W. Dahlinger*, with him *John D. Shafer*, for appellants.—Notice need not be given until the last delivery of material: Lucas v. Ruff, 45 Leg. Int. 154; Swaney v. Washington Oil Co., 7 C. C. 351; Malone v. Mining Co., 76 Cal. 578; Neeley v. Searight, 113 Ind. 316. A notice is sufficient which puts the owner on his guard or warns him that the initiatory step to the acquisition of a lien is being taken: Robbins v. Blevins, 109 Mass. 219; Phillips on Mechanics' Liens, sec. 338; Neeley v. Searight et al., 113 Ind. 316. Notice to a corporation may be through its agent: Board of Education v. Greenbaum, 39 Ill. 609. As to architect being such an agent as may be notified and bind owner: Lloyd's Law of Building and Buildings, secs. 11, 12 (2d ed.); Johnson's Mechanics' Liens, 173; Brown v. Cowan, 110 Pa. 588; Bank of Pennsylvania v. Gries, 35 Pa. 426; Duncan v. Hartman, 143 Pa. 596; Short v. Messenger, 126 Pa. 637; Kimberley v. Dick, L. R. 13 Eq. 1; Erskine v. Johnson, 23 Neb. 261; Goss v. Helbing, 77 Cal. 190; Jardin v. Pumphrey, 36 Md. 364; Cannon v. Helfrick, 99 Ind. 164.

The case was for the jury: Winters v. Mowrer, 1 Pa. Superior Ct. 47; Bank v. Field, 143 Pa. 473; Hill v. Trust Co., 108 Pa. 1; McGrann v. R. R. Co., 111 Pa. 171.

*J. S. Ferguson,* with him *E. F. Ferguson,* for appellees.—Notice of an intention to file a lien must be given, even when the materials are furnished directly upon the owner's order: Groetzinger v. Ostheim, 135 Pa. 604.

" When " in the act of assembly is the equivalent of " at the time of: " Strawich v. Munhall, 139 Pa. 163; Moss v. Greenburg, 34 W. N. 83.

OPINION BY SMITH, J., July 16, 1896 (after stating facts as above) :

Under these circumstances were the plaintiffs entitled to maintain a lien upon the building?

Two questions were involved in the inquiry: Was Vandevort an agent of the defendant within the purview of the act of May 18, 1887; and was the statement of Cochran to him a sufficient notice of an intention to file a lien, under the requirements of that statute. The part of the act material here is as follows : " That to entitle any one to the benefits of this act, he shall give notice to the owner or reputed owner of the property, or his or her agent, at the time of furnishing the materials, or performing work in and about the repairs, alterations or additions to any house or other building, of his intention to file a lien under the provisions of this act."

It is earnestly and ably argued by counsel for appellants that the relation of principal and agent is formed between an owner and an architect, by the employment of the latter to superintend the construction of a building, and that the facts of this case are at least adequate to require the question of the sufficiency of the notice to be submitted to a jury. It is no doubt true that in the purchase of material and the employment of mechanics, a supervising architect is to be regarded as the agent of the owner so as to subject the property benefited to a lien, or even to create a personal liability, where the architect is acting for the owner, or the latter ratifies his acts by accepting the material and services thus procured. Labor and material are necessary to carry out the work of construction which the architect is employed to supervise and direct; and their procurement may be considered within the apparent scope of his authority, so far as third persons are concerned. To this extent does the law recognize and enforce such contracts : Duff v. Hoffman,

63 Pa. 191; Brown v. Cowan & Steele, 110 Pa. 588. The act of June 16, 1836, section 12, requiring that liens shall be filed against the owner, and also against the contractor, architect or builder, was intended to place contractors on a plane with architects and builders in this respect, so that liens might be filed for work and material furnished to such contractors : Harlan v. Rand, 27 Pa. 516; Duff v. Hoffman, supra. It was also intended for the benefit and protection of the owners : College v. Church, 1 W. & S. 465; McCay's Appeal, 37 Pa. 125. But this act does not attempt to define the authority of an architect, or his relation to the owner of a building while overseeing its construction; and as the contract in this case was not with the architect its provisions can have no application here. There being no statute on the subject, the scope of an architect's powers and duties are to be determined by the facts, under the general law of agency.

The classification of agencies is based rather upon the powers granted than on any inherent difference between them. They are known as general and special, and their powers may be express or implied, in accordance with the nature of the grant. A general agent may have authority to transact all manner of business for his principal, or to transact all the business of a particular kind; and the grant of any matter necessary to the complete execution of his authority will be implied, and limited only to the usual means of accomplishing it. A special agent is one whose authority is confined to a particular act, or to certain specific acts; his authority must be strictly observed, and cannot be extended by implication: Loudon Savings Fund v. Savings Bank, 36 Pa. 498; Williams v. Getty, 31 Pa. 461; Bishop on Contracts, 2d ed. 187. This distinction, though difficult of application in many cases, is important because of its legal effect on the rights of parties, where the powers of agents are in dispute. Where the agency is created by a written instrument, the fact and scope of the agency are questions of law to be decided by the court: Loudon Saving Fund v. Savings Bank, 36 Pa. 498. Where its creation rests in parol, and its existence and scope are controverted, those questions must be determined by a jury: Shriver v. Stevens, 12 Pa. 258; Loudon Saving Fund v. Bank, 36 Pa. 503; Peries v. Aycinena, 3 W. & S. 79; Jordan v. Stewart, 23 Pa. 247; Seiple v. Irwin, 30

Pa. 513 ; Williams v. Getty, 31 Pa. 461.  But where it rests
in parol and there is no dispute as to its terms, and no ambi-
guity which needs explanation, it is for the court to determine
its meaning and effect : Elliott v. Wanamaker, 155 Pa. 67.

It is elementary law that the principal is bound to third par-
ties for the acts of his general agent done within the apparent
scope of the authority with which the agent is invested, although
the particular acts may transcend his secret instructions.   This
rule is required by public policy, and is based on the doctrine
that where one of two persons must suffer by the act of a third
person, he who has held that person out as having authority to
do the act should be bound by it : Evans' Agency, 591 ; Brooke
v. Railroad, 108 Pa. 546.  It follows upon like principle that,
where a third party has notice of the actual powers of an agent,
he cannot hold the principal for the agent's conduct in excess
of those powers, although within the apparent scope of the
agent's authority.   A party who avails himself of the acts of
an agent, in order to charge the principal, must prove the
authority under which the agent acted.   The burden of proof
lies on him to establish the agency and its extent : Hays v.
Lynn, 7 Watts, 525 ; Moore v. Patterson, 28 Pa. 512 ; Insur-
ance & Trust Co. v. Shultz, 82 Pa. 51 ; Refining Co. v. Bush-
nell, 88 Pa. 91 ; Underwriters Ass'n, v. George, 97 Pa. 241 ;
Relief Ass'n v. Post, 122 Pa. 597.   The relation of principal
and agent existing, it is unquestionably the law, independent
of any statute, that notice to the agent of matters affecting the
business committed to his charge is notice to the principal :
Bridge Co. v. Pomroy, 15 Pa. 151 ; Reed's Appeal, 34 Pa. 207 ;
Short v. Messenger, 126 Pa. 637.  But in order to visit the
principal with this constructive notice, the information must
have been obtained by the agent in the course of the business
of the agency : Hood v. Fahnestock, 8 Watts, 489 ; Bracken v.
Miller, 4 W. & S. 110 ; Martin v. Jackson, 27 Pa. 508 ; House-
man v. Girard Ass'n, 81 Pa. 256 ; Barbour v. Wiehle, 116 Pa.
308.   The rule upon this subject, which was adopted by the
Supreme Court in Philadelphia v. Lockhardt, 73 Pa. 217, is well
stated in Fulton Bank v. Canal Co., 4 Paige, 127, as follows :
" Notice to the agent, when it is the duty of the agent to act
upon such notice, or communicate it to his principal in the
proper discharge of his duty as agent, is notice to the principal,

and applies to agents of corporations as well as of others." See also Mechem on Agency, par. 725 ; Conger v. Ry. Co., 1 Am. Rep. 164. Another pertinent rule is that where an agent is employed merely to conduct a particular business, not of a public character, it is the duty of a party dealing with him for the first time to ascertain and know the extent of his authority : Rice v. Jackson, 171 Pa. 89.

These general principles would seem to cover the questions of law pertinent to the facts of this case.

It must be borne in mind that the controversy here is not over the structure, or the character of the work or material, or the supervision of the erection and construction by the architect. It involves the right of the plaintiff to enforce a special remedy against the owner of the building for the recovery of his claim, which in turn depends upon the fact of notice having been given as required by the act of 1887. It is not pretended that the actual powers and duties of the architect in any wise relate to the financial affairs of the corporation, or to the subject-matter of the notice. Can they be implied from the character of his employment?

The authority of an architect, like that of any other employee, is limited to the scope of his employment. When, in the proper discharge of his duty, things necessarily incident to it arise, they are said to be within the apparent scope of his employment, and may be implied from his general powers, so far at least as third persons are concerned ; but things not within the actual or apparent scope of his duties are not within his authority, and he cannot bind his principal in relation to them nor can third persons do so for him, or for themselves.

We have failed to discover any precedent for holding that an architect, as such, has any authority over the payment of debts incurred in the construction of the building, or to determine in what manner such debts shall be paid or secured ; nor do we see upon what principle the scope of an architect's employment can be constructively enlarged so as to include that power and duty. His authority, relating solely to the erection of the structure and the character of the material and work employed, can by no reasonable implication be said to include the payment of debts or the mode of securing them. From all the evidence, the agency of the architect was limited to deciding on the

quality of the materials furnished by the contractor, and directing their use. With their purchase, and with payment for them, he had no concern; and this was known to the appellants. The plaintiffs cannot charge the owner with the effect of a notice to the architect respecting a matter beyond the known limits of his authority; the duty of ascertaining the extent of his powers rested upon them, and their neglect to do this cannot operate to the injury of the defendant: Rice v. Jackson, supra. The subject-matter not being within his authority, it was no part of the architect's duty to communicate the notice to his employer. Giving all the facts and reasonable inferences the fullest probative force under the foregoing principles of law, we must hold that the subject-matter of the notice was clearly not within the actual or apparent duties of the architect, and that the so-called notice to him did not bind the owner.

The remaining question is as to the sufficiency of the so-called notice in form and substance. The statute provides that: " To entitle any one to the benefits of this act, he shall give notice . . . . of his intention to file a lien under the provisions of this act." The language of the alleged notice is " I told him if we did not get our money at that time we would look to the building for the payment of our bill." Respecting the notice, there is no room for inference. Its language is undisputed. The only question is with respect to its meaning. Does it give, with reasonable precision and certainty, the information to which the statute entitled the owner? If it does not its purpose must fail. How can it be said that this is a notice by the appellants to the architect or the defendant of their intention to file a lien under the provisions of the statute. One of the plaintiffs said they " would look to the building," but when, where, or in what manner, or what was meant by this was not stated. The defendant was not mentioned or referred to, and nothing was said about a notice, or that this remark was intended as one; a lien, or an intention to file one, was not mentioned, and no reference was made to the act of assembly or to legal proceedings. To hold that this expression of indefinite meaning is sufficient would be to substitute doubtful expressions for the specific notice required by the statute. Important rights and liabilities are not to be created in that haphazard way. The act is part

of a statutory system of remedies beyond that provided by the common law and is therefore to be strictly construed.

While no particular form or words is necessary, a notice, to be effective, should be framed in language sufficiently clear and definite to inform the person notified that the material-man intends to file a lien under the act of assembly for the price of the material furnished by him in the construction of the building. This has not been done by the plaintiffs in the present case, either in form or substance. For the reasons given the learned judge of the court below committed no error in entering the nonsuit, and subsequently refusing to take it off.

The judgment is affirmed.